IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 12, 2017 Session

**JOSEPH NEWTON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2010-D-2957    Seth W. Norman, Judge**

_____

**No. M2016-02240-CCA-R3-PC**

_____

A jury convicted the Petitioner, Joseph Newton, of rape, and he was sentenced to serve eight years in prison. In his motion for a new trial, the Petitioner alleged that he was denied his constitutional right to the effective assistance of his trial counsel. The trial court denied the motion, and this court affirmed the Petitioner's conviction on appeal. The Petitioner filed a timely post-conviction petition, alleging ineffective assistance of counsel at the motion for a new trial and on appeal, and the post-conviction court denied his petition. On appeal, he asserts that his counsel were deficient in bringing claims against trial counsel prematurely, in failing to call witnesses and investigate, and in omitting issues on direct appeal. He contends he is entitled to relief based on cumulative error. After a thorough review of the record, we conclude that the Petitioner did not receive the ineffective assistance of his counsel, and we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

John M. Ballard, Nashville, Tennessee, for the appellant, Joseph Newton.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn Funk, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

### Trial

The Petitioner was tried and convicted of raping the victim after she entered his taxicab seeking a ride home because she was too intoxicated to drive. The Petitioner initially denied having any knowledge of the victim. DNA evidence established that the Petitioner was the rapist.

At trial, the victim testified that she was very intoxicated on the evening of the rape, that the employees of a bar where she had been drinking put her into a taxi when the bar closed around 3:00 a.m., and that the driver of the taxi, the Petitioner, drove her to an isolated location and raped her. The victim was able to escape the taxi after the rape, and she fled to a nearby area that was well-lit. She summoned the police and was taken to the hospital, where medical personnel collected physical evidence and treated her for any potential infections that may have been transmitted to her during the rape. Trial counsel cross-examined her regarding a statement she made at the hospital that her attacker was a medium-skinned African American man with a foreign accent and a statement she made a few days later describing him as light-skinned. She agreed that the Petitioner, who was an immigrant from Ghana, was not light-skinned.

An employee of the bar where the victim had been drinking confirmed that she was extremely intoxicated and that he procured a taxi for her. He testified that the taxi which ultimately took the victim was not summoned via telephone. Instead, he exited the building with the victim and hailed the taxi from across the street. Because of a prior experience with a violent taxi driver, the employee noted the taxi's number. He was able to tell police that the taxi was Allied taxicab number 70, 71, or 77.

Police collected DNA evidence from the drivers of these three taxis. Detective Robert Carrigan testified that he went to a gas station to interview the Petitioner and another taxi driver who was under suspicion. He asked the Petitioner about the case and showed the Petitioner a photograph of the victim. The Petitioner "denied ever having seen her, ever met her, denied ever giving her a ride, ever picking her up in the Hillsboro/21st Avenue area." Detective Carrigan confirmed that the Petitioner denied being acquainted with the victim or having had any sexual contact with her. Detective Carrigan proceeded to collect DNA evidence from both the drivers at the gas station. Trial counsel cross-examined Detective Carrigan and other witnesses about the chain of custody of the evidence, implying that the Petitioner's DNA sample had been switched with the other sample which was collected simultaneously.

The Petitioner was the driver of Allied taxi number 70, and his DNA matched the sperm recovered from the victim. An expert in serology testified that the probability of an individual other than the defendant having the same DNA profile was greater than the world population.

The victim was presented with two photographic lineups prior to the time that suspicion had settled on the Petitioner. Neither contained a photograph of the Petitioner, and the victim did not make an identification from either lineup. After the results of the DNA testing came back to police, the victim was shown a photographic lineup including the Petitioner's picture. She was not told that there had been a match to the recovered DNA. She identified the Petitioner as her assailant, stating that she was seventy percent sure he was the rapist. She testified that she meant she was "pretty darn sure."

During opening statements, trial counsel asked the jury to keep an open mind because they would hear the Petitioner testify to his version of events. At the close of the State's proof, the Petitioner elected not to testify. In closing argument, trial counsel conceded that the victim had been raped and that consent was not an issue. He argued that there was very little incriminating evidence aside from the DNA and that the DNA samples could have been switched.

The Petitioner was charged with rape by force or coercion in count one and with rape of a person who was mentally incapacitated or physically helpless in count two. The jury convicted the Petitioner of rape in count one and of the lesser-included offense of assault by provocative contact in count two, and the two counts were merged into a single conviction.

### Sentencing and Motion for a New Trial

At the sentencing hearing, the Petitioner testified that he was "100 percent" innocent and that he had been unable to defend himself against the charges because he was never told when the alleged rape occurred. He testified that he listened to the testimony at trial, including that of the victim, but that he had no idea what day the victim was raped. He agreed that he had told police that he did not know the victim, that he had never seen her, and that she had never been in his taxi. He argued that the victim had at one point described him as light-skinned. The trial court, finding that the Petitioner was dishonest and unremorseful in his testimony, denied alternative sentencing and sentenced the Petitioner to serve eight years in prison.

The Petitioner retained two new attorneys, one of whom represented him after sentencing and through the hearing on the motion for a new trial ("successor counsel") and one of whom also represented him on appeal ("appellate counsel"). New counsel

procured an order allowing further testing of the DNA evidence through an independent agency. At the motion for a new trial, the Petitioner challenged the sufficiency of the evidence and his sentence. He also asserted that trial counsel had been ineffective in announcing to the jury during opening statements that the Petitioner would testify, in pursuing a strategy of mistaken identity rather than consent, and in conceding elements of the crime in closing arguments.

Trial counsel testified at the hearing on the motion for a new trial that he knew that the State would introduce DNA evidence that the Petitioner was the perpetrator. Trial counsel had frequent contact with the Petitioner prior to trial, and "[t]he defense shifted weekly from not there, to it was consensual, to even she attacked him." Trial counsel had advised the Petitioner that the best defense strategy was to claim that the victim had consented, and trial counsel prepared to cross-examine the victim extensively.

On the day of trial, the Petitioner, against trial counsel's advice, insisted both that he would testify and that his testimony would be that the State was mistaken about his identity and that he was not the rapist. Trial counsel "had to scrap whatever consent defense [he] had crafted" because it would have been difficult to pursue a strategy at odds with his client's anticipated testimony. Trial counsel agreed that a consent defense would also have been difficult to establish because Detective Carrigan had recorded the interview in which the Petitioner denied having any knowledge of the victim, having had the victim in his taxi, or having had sex with the victim. Trial counsel recalled that in the recording, "upon providing the swab, [the Petitioner] said, well, if it turns out to be me, maybe I gave her a ride." Trial counsel agreed that the victim was a strong witness and that the fact that she called the police immediately after the crime at 3:00 or 4:00 a.m. from an apartment complex she had reached on foot appeared inconsistent with consent. Trial counsel testified that it was the Petitioner's choice not to testify. He did not think that testimony from the Petitioner would have helped the defense.

The Petitioner did not testify at the motion for a new trial. The trial court found that "everything that [trial counsel] did was effective in this matter." On appeal, the Petitioner raised only the ineffective assistance of counsel claims, and this court denied relief. *State v. Joseph Newton*, No. M2014-00603-CCA-R3-CD, 2015 WL 1543386, at *8 (Tenn. Crim. App. Apr. 2, 2015), *perm. app. denied* (Tenn. July 17, 2015).

### Post-Conviction

The Petitioner filed a post-conviction petition, alleging various deficiencies at all stages of his representation. In particular, the Petitioner alleged that successor counsel prematurely brought claims of ineffective assistance of counsel, that he should have been called to testify at the motion for a new trial, that his attorneys failed to present an alibi

witness, that appellate counsel was deficient in failing to raise various issues, and that he was entitled to relief for cumulative error.

At the hearing, successor counsel testified that he spoke to the Petitioner about the various issues that could be raised on appeal. The Petitioner wanted to pursue an ineffective assistance of counsel claim. Successor counsel testified that he had a lengthy period of time to prepare for the hearing and that he felt he could adequately raise an ineffective assistance of counsel claim on direct appeal because he was able to fully review the record, investigate and present evidence, and essentially treat the hearing on the motion for a new trial as a post-conviction hearing. Successor counsel discussed with the Petitioner whether or not the Petitioner should testify at the motion hearing, and the Petitioner made the choice not to testify. Successor counsel noted that the primary alleged deficiency was that trial counsel had rashly promised the jury that the Petitioner would testify, and successor counsel did not believe that the Petitioner's testimony would have had any bearing on that subject. The Petitioner never told successor counsel that he had been prevented from testifying at trial, and successor counsel's review of the record revealed that the Petitioner had been thoroughly advised of his rights when he decided not to testify.

Successor counsel testified that the Petitioner continued to assert his innocence throughout his representation but that the Petitioner did so under two inconsistent theories: mistaken identity and consent. He testified that the victim left the bar at around 3:00 a.m. and that there was only a lapse of around forty-five minutes to an hour before she called police to report the crime, making the Petitioner's claim that they had driven to his house, engaged in consensual sex, and driven back toward the Green Hills area improbable.

The Petitioner told successor counsel that Mr. Francis Kobri could give favorable testimony on his behalf, and successor counsel interviewed Mr. Kobri. The motion for a new trial did not allege that trial counsel was deficient in failing to discover Mr. Kobri because the Petitioner did not tell successor counsel about Mr. Kobri until "way later in the process." Successor counsel determined that Mr. Kobri's statements were not credible. Mr. Kobri claimed that he had seen the Petitioner with the victim at around 11:00 p.m. on the night of the rape at the house that Mr. Kobri and the Petitioner shared in another part of town. Evidence at trial had established that the victim was with her friends and her sister at that time and that she first encountered the Petitioner around 3:00 a.m. when a bar employee placed her into his taxi. Furthermore, the statements were inconsistent with the Petitioner's continued claims of mistaken identity.

Mr. Kobri testified at the post-conviction hearing that in November 2009, when the rape occurred, he was living with the Petitioner and generally worked from 4:00 p.m.

to 2:00 a.m.  He testified that after returning home from work around 3:00 a.m. on the night of the rape, he saw the Petitioner and the victim together at his home.  About fifteen minutes later, the Petitioner asked to borrow Mr. Kobri's car, despite the fact that the Petitioner's taxi was at the home.  Mr. Kobri acknowledged that he had attended the Petitioner's 2012 trial and sentencing hearing without volunteering this information.  He also acknowledged that he had initially stated to successor counsel that he saw the Petitioner with the victim much earlier in the evening.  He explained that he initially did not remember the time because years had passed between the 2009 rape and the 2014 hearing on the motion for a new trial but that, in preparation for the 2016 hearing, "[w]hen I tried to remember and I tried to see, that's why I said it can be this time as well."

The Petitioner testified that successor counsel made the decision to pursue the ineffective assistance of counsel claim on direct appeal.  The Petitioner asserted that he told successor counsel that he had wanted to testify at trial and that trial counsel had prevented him from testifying.  He claimed that trial counsel told him that he would be able to testify at another stage of the proceeding.  The Petitioner did not tell successor counsel that he wanted to testify at the motion hearing but told him that trial counsel's testimony was not accurate.

The Petitioner stated that if he had testified at either the trial or the hearing on the motion for a new trial, he would have maintained that the victim consented to sexual intercourse.  He acknowledged having told Detective Carrigan that he had never seen the victim or had sex with her but claimed that he did not "pay[] attention" to the victim's photograph because he had never raped anyone in his taxi.  According to the Petitioner, the victim did not want to go home when she got into the taxi but wanted to go to his house, which was a ten- to twelve-minute drive, in order "to pass the time."  He acknowledged that his testimony at the sentencing hearing was inconsistent with a claim that the victim consented, and he acknowledged that he did not mention Mr. Kobri's anticipated testimony at the sentencing hearing. The Petitioner claimed he told trial counsel to summon Mr. Kobri as a witness.

The post-conviction court denied relief.  The post-conviction court found that successor counsel was not ineffective for presenting claims hinged on ineffective assistance of counsel because he was able to adequately prepare for the hearing and to present evidence to support the Petitioner's ineffective assistance of counsel claims.

Likewise, the post-conviction court declined to find that successor counsel was ineffective for not presenting the Petitioner's testimony at the hearing on the motion for a new trial.  The post-conviction court credited trial counsel's and successor counsel's testimony that the Petitioner chose not to testify at trial and at the hearing on the motion

for a new trial. The court found that the Petitioner's proffered testimony that he was prevented from testifying at trial would have contradicted his sworn statements made pursuant to *Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999), *on reh'g* (Mar. 30, 2000), and would not have led to a different result if they had been introduced at the hearing on the motion for a new trial. The post-conviction court found that the Petitioner urged trial counsel to pursue a defense of mistaken identity and not consent and that the Petitioner's claims regarding consent were simply not credible. The post-conviction court found that successor counsel was not deficient in refusing to present the testimony of Mr. Kobri because elements of Mr. Kobri's testimony were vague, inconsistent, and "ma[de] little sense," and because the post-conviction court credited trial counsel's and successor counsel's testimony that the Petitioner's theory of his alleged innocence was constantly changing.

The post-conviction court found that there was no prejudice in appellate counsel's failure to raise sufficiency of the evidence or sentencing on appeal because the issues did not have merit. The post-conviction court found that trial counsel's closing argument was a matter of strategy and accordingly concluded that there was no prejudice arising from appellate counsel's failure to cite to case law regarding any errors in closing argument. The post-conviction court denied relief.

## ANALYSIS

On appeal, the Petitioner asserts that: (1) raising the issue of ineffective assistance of trial counsel prior to post-conviction constituted ineffective assistance of counsel; (2) successor counsel was ineffective in failing to call him to testify at the motion for a new trial; (2) trial counsel and successor counsel were ineffective in failing to present an alibi witness; (4) appellate counsel was deficient in failing to raise the issues of sufficiency of the evidence, denial of probation at sentencing, and trial counsel's alleged errors in closing argument; and (5) the Petitioner is entitled to relief based on cumulative error.

### I. Ineffective Assistance of Counsel

The Post-Conviction Procedure Act provides for relief when a petitioner's "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witness, the weight and value of witness testimony, and the resolution of

factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of fact and law reviewed de novo. *Id.*

The Petitioner asserts that his conviction is void because he was denied his right to the effective assistance of counsel. Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State,* 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

"Establishing deficient performance requires showing 'that counsel's representation fell below an objective standard of reasonableness,' which standard is measured by 'professional norms' prevailing at the time of the representation." *Garcia v. State*, 425 S.W.3d 248, 256-57 (Tenn. 2013) (quoting *Strickland,* 466 U.S. at 688). So long as counsel's representation was "'within the range of competence demanded of attorneys in criminal cases,'" counsel will not be deemed to have performed deficiently. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Deficient performance requires a showing of errors so serious that "'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland,* 466 U.S. at 687).

The reviewing court should not second-guess strategic choices or measure counsel's performance by "'20-20 hindsight.'" *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997) (quoting *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). In reviewing counsel's professional decisions, a "'fair assessment … requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Goad*, 938 S.W.2d at 369 (quoting *Strickland*, 466 U.S. at 689). Strategic decisions based on a thorough investigation of law and relevant facts are virtually unchallengeable. *Felts*, 354 S.W.3d at 277. However, deference is only given to strategic decisions which "are informed ones based upon adequate preparation." *Moore*, 485 S.W.3d at 419.

In determining prejudice, the reviewing court must decide if there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is "'a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

## A. Raising Ineffective Assistance of Counsel on Direct Review

The Petitioner asserts that successor counsel performed deficiently when he raised the ineffective assistance of trial counsel claims at the motion for a new trial. The Petitioner contends that prematurely raising these claims was "fraught with peril" and that because successor counsel called trial counsel to testify, successor counsel was not able to ask leading questions on cross-examination.

We begin by observing that this court has indeed stated that raising a claim of ineffective assistance of counsel on direct appeal is "fraught with peril." *Thompson v. State*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997) (quoting *State v. Jimmy L. Sluder*, No. C.C.A. 1236, 1990 WL 26552, at *7 (Tenn. Crim. App. Mar. 14, 1990)). The danger of raising a claim of ineffective assistance of counsel on direct review arises "because of the significant of amount of development and factfinding such an issue entails." *Kendricks v. State*, 13 S.W.3d 401, 404-05 (Tenn. Crim. App. 1999). When the issue is raised on direct appeal, appellants risk having the issue resolved without the opportunity to prove their allegations in an evidentiary hearing. *Thompson*, 958 S.W.2d at 162.

Furthermore, once a claim of ineffective assistance of trial counsel has been raised, the issue will be considered previously determined in a subsequent post-conviction action. *See* T.C.A. § 40-30-106(h) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing."); *John Earl Scales v. State*, No. M2003-01753-CCA-R3-PC, 2004 WL 1562542, at *6-7 (Tenn. Crim. App. July 13, 2004); *Russell Lane Overby v. State*, No. W2001-01247-CCA-R3-PC, 2002 WL 818250, at *2 (Tenn. Crim. App. Apr. 26, 2002). A claim of ineffective assistance of counsel is generally a single ground for relief for the purposes of post-conviction review. *Cone v. State*, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995). Accordingly, even when a claim of ineffective assistance of counsel is based on new factual allegations, the issue will be considered previously determined if a prior court made a ruling on the claim. *Id.* "'The fact that such violation may be proved by multiple acts or omissions does not change the fact that there remains only one ground for relief.'" *Thompson*, 958 S.W.2d at 161 (quoting *Frank McCray v. State,* No. 01C01-9108-CR-00255, 1992 WL 217780, at *5 (Tenn. Crim. App. Sept. 11, 1992)). In a post-conviction hearing, due process guarantees a petitioner only "the *opportunity* to be heard at a meaningful time and in a meaningful manner." *Stokes v. State,* 146 S.W.3d 56, 61 (Tenn. 2004). "A full and fair hearing has occurred where the petitioner is afforded the

opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." T.C.A. § 40-30-106(h).

A petitioner whose claims of ineffective assistance of trial counsel have been determined on direct review may nevertheless raise claims of ineffective assistance of counsel which pertain to purported deficiencies on the part of successor or appellate counsel. *Russell Lane Overby*, 2002 WL 818250, at *2. "[A]llegations regarding the ineffectiveness of appellate counsel, when trial and appellate counsel are different, are not waived under the Post-Conviction Act when those allegations are not presented on direct appeal." *John Earl Scales v. State,* No. M2001-00310-CCA-R3-PC, 2002 WL 1949697, at *2 (Tenn. Crim. App. Aug. 23, 2002); *see State v. Michael E. Fischer*, No. M2011-02196-CCA-R3-CD, 2012 WL 5378037, at *5 (Tenn. Crim. App. Nov. 1, 2012); *Ronald Yates v. State*, No. W2008-02067-CCA-R3-PC, 2009 WL 4505436, at *3 (Tenn. Crim. App. Dec. 3, 2009); *Jeremy Crosby v. State*, No. M2007-00611-CCA-R3-PC, 2008 WL 1850805, at *3 (Tenn. Crim. App. Apr. 25, 2008).

In this case, the Petitioner claims that successor counsel was ineffective in raising claims regarding ineffective assistance of trial counsel prior to post-conviction review. This court has previously allowed petitioners to present proof on similar claims. *Ronald Yates v. State*, No. W2012-02455-CCA-R3-PC, 2014 WL 295834, at *14 (Tenn. Crim. App. Jan. 27, 2014) (noting that "an ineffectiveness claim may be raised in a conviction appeal and that if the claim is raised ineffectively, the issue may be addressed in a subsequent post-conviction petition."); *Bryan R. Milam v. State*, No. M2012-01981-CCA-R3-PC, 2014 WL 133212, at *23-24 (Tenn. Crim. App. Jan. 15, 2014) (concluding that appellate counsel was deficient in failing to pursue a claim of ineffective assistance of trial counsel which had been raised at the motion for a new trial but finding no prejudice); *Laraiel Winton v. State*, No. E2011-00762-CCA-R3-PC, 2012 WL 273759, at *5-6 (Tenn. Crim. App. Jan. 31, 2012) (concluding that failure to pursue certain claims of deficiency in trial counsel's performance did not constitute ineffective assistance of successor counsel); *Nelson Troglin v. State*, No. E2010-01838-CCA-R3-PC, 2011 WL 4790943, at *16-17 (Tenn. Crim. App. Oct. 11, 2011) (considering whether "appellate counsel was ineffective in raising the issue of ineffective assistance of counsel" and concluding that there was no deficiency and no prejudice due to lack of merit in the underlying issue).

While the Petitioner notes that matters regarding ineffective assistance of trial counsel are better litigated on post-conviction review, where a petitioner will be allowed to present evidence at a hearing, he makes no concrete allegations regarding how raising the issues on direct review deprived him of a meaningful opportunity to present his claims. The post-conviction court found that successor counsel had ample opportunity to review the record, investigate allegations of deficient performance, investigate potential

witnesses, and call witnesses to present evidence in support of the claim of ineffective assistance of counsel. The Petitioner has not demonstrated that the mere act of raising the claims prior to post-conviction was, in this case, deficient or prejudicial.

The Petitioner's claim that he was denied the opportunity to ask trial counsel leading questions on cross-examination is waived for failure to provide argument or citations in his brief. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). The Petitioner never cites to a single instance of evidence he was unable to introduce, nor does he argue that he suffered any prejudice from these unspecified omissions of evidence. The Petitioner also argues in his brief that successor counsel was somehow at fault for not representing him on appeal. Clearly, however, the Petitioner could not have received the ineffective assistance of an attorney who was not, at the time, his attorney.

Accordingly, we conclude that the Petitioner has not demonstrated that the choice to raise the ineffective assistance of trial counsel claims on direct appeal was deficient or prejudicial.

### B. Failure to Present Petitioner's Testimony at the Hearing on the Motion for a New Trial

The Petitioner faults successor counsel for failing to call him to testify at the hearing on the motion for a new trial, alleging that his testimony would have established that trial counsel performed deficiently by preventing him from testifying at trial. The Petitioner also contends that his testimony would have established that trial counsel should have pursued a theory of consent.

Successor counsel stated that he discussed the possibility of testifying with the Petitioner and that the Petitioner chose not to do so. The Petitioner never alleged to successor counsel that he had been denied his right to testify at trial. Instead, the ineffective assistance of counsel claim centered around trial counsel's choice to inform the jury that the Petitioner would testify when there was still some doubt on the subject. Successor counsel believed the Petitioner's testimony would not have been relevant to this claim, since the record established that trial counsel did make a statement that the Petitioner would testify and that the Petitioner ultimately did not testify. The Petitioner testified that he was prevented from testifying at trial and that he wanted to pursue a theory of consent but was prevented from doing so by his attorney.

The post-conviction court made credibility findings and determined that the Petitioner had made a knowing and voluntary choice not to testify both at the trial and at

the hearing on the motion for a new trial. The court noted that the Petitioner's testimony that he was prevented from testifying at trial would have contradicted his sworn statements that he was choosing not to testify. Moreover, the post-conviction court generally credited successor counsel's testimony, and successor counsel testified that the Petitioner never told him that he was prevented from testifying at trial. The post-conviction court also found that the Petitioner had insisted to trial counsel that "it was a case of mistaken identity" and that the evidence undermined a defense of consent. We are bound by the post-conviction court's credibility determinations so long as the evidence does not preponderate against them. *Kendrick*, 454 S.W.3d at 457. The post-conviction court determined that the Petitioner made the choice not to testify at the motion hearing, and he has accordingly failed to show deficiency. The post-conviction court also determined that the Petitioner's testimony at the hearing would not have established that he was prevented from testifying at trial or that consent would have been a reasonable defense. Accordingly, he has also failed to establish prejudice.

## C. Failure to Investigate

The Petitioner alleges that trial counsel and successor counsel were deficient in failing to uncover and present the testimony of Mr. Kobri. We note initially that any such claim against trial counsel is waived for failure to present it to the post-conviction court. T.C.A. § 40-30-106(g) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented."); T.C.A. § 40-30-110(f); *Butler v. State*, 789 S.W.2d 898, 902 (Tenn. 1990) (concluding that issue not presented to the post-conviction court was waived). It is likewise previously determined because once a Petitioner has brought ineffective assistance of counsel claims against trial counsel, those claims "cannot be relitigated in a post-conviction proceeding, even though the petitioner may not have made the same allegations on direct appeal that he now makes in his post-conviction petition." *Ronald Yates*, 2009 WL 4505436, at *3; *see also* T.C.A. § 40-30-106(h).

As the claim pertains to successor counsel, the evidence showed that successor counsel pursued the Petitioner's claims that Mr. Kobri could present exculpatory evidence by contacting and interviewing Mr. Kobri. During his interview with Mr. Kobri, successor counsel discovered that Mr. Kobri's version of events fundamentally lacked credibility. Mr. Kobri's statement was inconsistent with the timeline of events confirmed by the other evidence at trial because Mr. Kobri claimed to have seen the victim and the Petitioner together at 11:00 p.m., whereas other evidence indicated that the victim was with friends until close to 3:00 a.m., when the bar employee hailed the Petitioner's taxi, Allied taxicab number 70, to take her home. Mr. Kobri's memory miraculously improved with the passing of two years between the motion hearing and the

post-conviction hearing, when he suddenly recalled that he had seen the victim and the Petitioner, whose trial he had attended, at 3:00 a.m. rather than 11:00 p.m. The post-conviction court found that Mr. Kobri's testimony was vague and inconsistent. Furthermore, the post-conviction court credited the testimony of trial counsel and successor counsel that the Petitioner frequently insisted that the charges were the result of mistaken identity, rendering Mr. Kobri's testimony that the Petitioner was with the victim unhelpful. Although the Petitioner describes it as "unfortunate" that the post-conviction court was the only trier of fact to weigh Mr. Kobri's credibility, the record amply supports the post-conviction court's implicit finding that Mr. Kobri was untruthful. Successor counsel made a reasonable strategic decision not to present testimony that lacked credibility, that was inconsistent with the Petitioner's claim of mistaken identity, and that did not contradict the State's timeline of events. The Petitioner has accordingly failed to show any deficiency.

### D. Ineffective Assistance of Counsel on Direct Appeal

The Petitioner contends that appellate counsel was deficient in failing to raise sufficiency of the evidence and sentencing on appeal and failing to sufficiently brief the claim that trial counsel's closing argument constituted ineffective assistance of counsel. "Appellate counsel are not constitutionally required to raise every conceivable issue on appeal," and the choice of which issues to raise rests within appellate counsel's discretion. *Carpenter*, 126 S.W.3d at 887. "Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel." *Campbell v. State*, 904 S.W.2d 594, 597 (Tenn. 1995). A reviewing court gives "considerable deference" to appellate counsel's judgment regarding which issues to raise, so long as the choices are within the "range of competence required of attorneys in criminal cases." *Carpenter*, 126 S.W.3d at 887. When a claim of ineffective assistance of counsel is premised on the failure to raise an issue, the reviewing court should address the merits of the issue. *See id.* "Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it." *Id.* The strength of the omitted issue also has bearing on whether failure to raise the issue resulted in prejudice. *Id.* The reviewing court may consider the following factors in determining whether omitting an issue on appeal was deficient:

1) Were the omitted issues "significant and obvious"?
2) Was there arguably contrary authority on the omitted issues?
3) Were the omitted issues clearly stronger than those presented?
4) Were the omitted issues objected to at trial?
5) Were the trial court's rulings subject to deference on appeal?

6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7) What was appellate counsel's level of experience and expertise?

8) Did the petitioner and appellate counsel meet and go over possible issues?

9) Is there evidence that counsel reviewed all the facts?

10) Were the omitted issues dealt with in other assignments of error?

11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Id.* at 888 (noting that the final factor reaches the ultimate issue of deficiency). Because the Petitioner failed to call appellate counsel to testify at the post-conviction hearing, he has failed to present evidence relevant to several of these factors, including appellate counsel's reasoning for omitting the issues.

## 1. Sufficiency of the Evidence

Appellate counsel did not raise sufficiency of the evidence on appeal. The post-conviction court found that there was no prejudice because the evidence was sufficient to sustain the verdict. Had the issue been raised, the reviewing court would have examined the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). On post-conviction review, the Petitioner presented no evidence or argument that the proof at trial failed to establish any particular element of the crime. Clearly, this omitted issue was not stronger than those actually presented, nor was it unreasonable to omit it. *See Carpenter*, 126 S.W.3d at 888. Considering that the conviction was supported by the overwhelming evidence that the victim was raped, that DNA evidence linked the Petitioner to the rape, that the victim was able to identify the Petitioner, and that the Petitioner's taxi number matched that given by a witness, appellate counsel's strategic decision not to raise the issue was not deficient or prejudicial.

## 2. Sentencing

Appellate counsel likewise did not raise the denial of alternative sentencing as an issue on appeal. The trial court denied the Petitioner probation, noting the Petitioner's failure to accept responsibility and his lack of remorse. In order to prevail on this issue, the Petitioner would have to demonstrate a reasonable probability that, but for the failure to raise the sentencing issue on appeal, the appellate court would have reversed the sentence of imprisonment. This court reviews the denial of an alternative sentence under an abuse of discretion standard, accompanied by a presumption of reasonableness, when

the sentence reflects that the decision was based on the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). While the Petitioner argues that he was eligible for alternative sentencing and that his lack of criminal history and the testimony of his friends and family weighed in favor of an alternative sentence, this argument is merely a quarrel with the trial court's weighing of the evidence. A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015). The Petitioner has presented no evidence that the trial court's sentencing decision was illogical, based on an incorrect legal standard, or based on a clearly erroneous assessment of proof. Appellate counsel made a reasonable strategic decision to rely on some issues to the exclusion of others on appeal, and the Petitioner has demonstrated no deficiency or prejudice.

### 3. Closing Argument

Finally, the Petitioner faults appellate counsel's failure to cite legal authority regarding trial counsel's concession of elements of the offense in closing argument. On direct appeal, appellate counsel argued that it was unreasonable for trial counsel to concede in closing argument that there was a rape and that there was no consent. Appellate counsel also took issue with trial counsel's statement that the case "would have been a loser" absent the DNA evidence. This court concluded that the issue was waived because there was no argument or citation to authority to support the claim for relief. *Joseph Newton*, 2015 WL 1543386, at \*8. The post-conviction court found that trial counsel's closing argument was a strategic choice and that there was accordingly no prejudice from failure to brief the issue.

We note that the Petitioner had told trial counsel that he intended to testify that he was not the perpetrator of the crime and that it was a case of mistaken identity. Trial counsel was constrained to proceed with this theory. Trial counsel cross-examined Detective Carrigan and the expert witnesses regarding the collection of the DNA samples, implying that the Petitioner's sample may have been mixed up with that of another taxi driver whose DNA sample was taken at the same time and location. Proceeding on the theory of the case which the Petitioner had selected, trial counsel argued in closing that the victim had been raped but that someone else was the perpetrator.

The facts of the matter are that the State's evidence was overwhelming and that trial counsel did not have a rational closing argument to present to the jury. The mistaken identity defense was contradicted by DNA evidence, by the victim's identification, and by the bar employee's identification of the taxi's number. The consent defense was not

credible because it was belied by the Petitioner's own statement that he had never seen the victim and because the victim was able to escape and report the crime immediately after its occurrence. Moreover, trial counsel had to select which theory of the case to pursue at the beginning of trial, at a time when the Petitioner insisted that he would be giving testimony supporting mistaken identity. Trial counsel could not credibly change this strategy for closing argument. The Petitioner has cited to no authority that "counsel's concession strategy was unreasonable." *Florida v. Nixon*, 543 U.S. 175, 189 (2004). Accordingly, he cannot demonstrate any prejudice in appellate counsel's lack of citation to authority in the appellate brief. He is not entitled to relief.

### E. Cumulative Error

The Petitioner contends that cumulative acts of deficiency entitle him to relief. The doctrine of cumulative error recognizes that "there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). This court has previously held that a petitioner "who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of counsel's errors." *Tracy F. Leonard v. State*, No. M2006-00654-CCA-R3-PC, 2007 WL 1946662, at *21 (Tenn. Crim. App. July 5, 2007) (citing cases). Because the Petitioner has not demonstrated multiple errors, he is not entitled to relief.

### CONCLUSION

Because the Petitioner has not demonstrated that he received the ineffective assistance of counsel, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE